IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) No. 07 CR 860 | |
| v. | ) ) ) Judge Rebecca R. Pallmeyer | |
| RUSHON AVANT | ) | |

NOTICE OF FILING

To: Ms. Sheri H. Mecklenburg
Assistant United States Attorney
219 S. Dearborn Street
Chicago, IL  60604

Please take notice that on this 24th day of July, 2008, the undersigned filed the following document(s) in the above captioned cause, a copy of which is attached hereto:

– DEFENDANT AVANT'S MID-HEARING SENTENCING MEMORANDUM

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By:   s/Daniel J. Hesler
         Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8347

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 07 CR 860 |
| v. | ) |
| | ) Judge Rebecca R. Pallmeyer |
| RUSHON AVANT | ) |
| | ) |

DEFENDANT AVANT'S MID-HEARING SENTENCING MEMORANDUM

Defendant RUSHON AVANT, by the Federal Defender Program and its attorney, DANIEL HESLER, respectfully submits the following memorandum stating the defendant's positions regarding sentencing as follows:

**I.    Procedural Background**

This memorandum arrives at an unusual point in the proceedings. As this Honorable Court is aware, Mr. Avant pled guilty to all counts. A PSR was prepared, and Mr. Avant and Mr. Hesler went through the PSR together. On July 11, 2008, the case proceeded to sentencing. Guidelines issues were decided, and sentence was about to be pronounced. At that point, the undersigned counsel realized that he had misread the PSR with respect to how the 60 months from count two fit into with the guideline range of 110 to 137 months from counts one and three.[1] This misapprehension meant that counsel

---

[1] There is no excuse for this error. If there were one, it would have to do with too many cases, counsel's error in moving slightly too quickly, and failing to actually look up in the guidelines table that level 25, Category VI in fact correlates to 110-137 months. Counsel did carefully check the offense calculation itself.

2

gave erroneous legal advice to Mr. Avant and his family about the likelihood of various sentencing possibilities. It also meant that counsel made some slightly odd arguments to the Court.[2]

Defense counsel apologizes to the Court, to Mr. Avant, to his family, and to the government for the confusion and the delay. Fortunately, there is not much substantive material that was not argued previously. Rather, the primary distinction between this submission and what was presented on July 11 is in the argument that is made from the underlying situation. It is possible that this Court will choose to impose the same sentence that it was about to impose on July 11. Or not. But if Mr. Avant is to spend something between 10 and 15 years behind bars, he should do so knowing that his appointed attorney at least asked for the lowest reasonable sentence possible.

## II. Sentencing Considerations

### A. The legal framework for sentencing.

As this court well knows, *United States v. Booker* rendered mandatory sentencing guidelines unconstitutional. 125 S.Ct. 738 (2005). In their place, *Booker* put into place an alternative sentencing structure in which the guidelines play a merely advisory role. The remedial opinion states judges should consider the sentencing guidelines as well as the other 3553(a) factors, and a sentence will still be appealable whether imposed inside or

---

[2] It is counsel's recollection that he asked the Court to impose a sentence around the middle of the guideline range, of 120 months. That request made no sense if the mandatory minimum on those counts was only 60 months, as it was.

outside of the guideline range "in the exercise of his discretionary power under § 3553(a)." *Booker*, 125 S.Ct. at 765.

After *Booker*, §3553(a) governs sentencing. Under §3553(a), a district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)... ." Those purposes are, fundamentally, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with appropriate educational, vocational, or medical services in the most effective manner. In deciding what is the shortest sentence consistent with these goals, a court is required to consider a number of other factors, including the sentencing guidelines, the nature of the offense, and the history and characteristics of the defendant.

Finally, if there were any doubt previously, the Supreme Court made the guidelines purely advisory in *Gall v. United States*, 128 S.Ct. 586 (2007). In *Gall*, the Supreme Court held that the Eight Circuit Court of Appeals erred when it remanded a case for resentencing in which the district court had sentenced an ecstacy defendant to probation despite a properly calculated guideline range of 30 to 37 months. The Supreme Court cited with approval the district court's statement that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and

circumstances involved in sentencing." *Id.* at 599. The *Gall* opinion repeatedly states that the guidelines, while they are one factor for a sentencing for a sentencing court to consider, cannot be the only factor, and the §3553(a) factors may in fact be more important. *See, e.g., id.* at 601-02.

Thus, if it appears from a consideration of all the facts and circumstances of a particular case that a sentence less than the guideline range would accomplish the statutory purposes, such a sentence is not only permitted but statutorily required. A sentencing court should not hesitate to impose a sentence below the guidelines if such a sentence is sufficient to accomplish the statutory aims.

**B.     In Mr. Avant's case, a sentence somewhat below the guidelines is appropriate.**

Taking into account all the counts, the effective guideline range is 170 to 197 months. Although the guidelines are merely advisory, Mr. Avant would suggest that three specific grounds particularly suggest that a sentence of 14 years incarceration is not necessary in his case, and that a slightly lesser sentence would be sufficient. The most persuasive reason is listed third.

   **1.     Kankakee**

Mr. Avant has been at the new Kankakee County holding facility since January 15, 2007. If one of the goals of locking up criminal defendants is to punish them (and it is), the taxpayers are getting an excellent return on their investment in Kankakee county. This Court is undoubtedly aware of many of the salient features of the new Kankakee

facility. Inmates spend much of their time in strict confinement; the rest is spent eating or watching television. The facility has no conventional windows; inmates have difficulty telling day from night. Reportedly, phone calls to the outside cost approximately $2 per minute, drastically more than what they cost at the MCC. There are no contact visits with family members. To visit with family (including children), visitors must drive to Kankakee, and then use a closed circuit TV system for a maximum of 45 minutes. There are almost no opportunities for classes, employment, or recreational activities.

All incarceration is painful. Incarceration at a place like Kankakee is significantly more painful. Moreover, it cannot be said that Mr. Avant put himself into that particular form of confinement by his conduct. Pretrial inmates are not sorted by security criteria. Instead, there is a more-or-less random assignment to the MCC or one of the outlying jails. Mr. Avant was just unlucky.

If there is a silver lining to this, Mr. Avant has been reflecting very intensely on the reasons he does not want to put himself back in this situation. Like all such learning situations, Mr. Avant would like it to end sooner rather than later, but the painful nature of life an outlying jail may have the effect of focusing an inmate on remorse.[3]

As such, seven to ten months of peculiarly punitive incarceration at the beginning of his sentence (as Mr. Avant is experiencing) may serve as a particularly efficient mode

---

[3]This should not be read as an endorsement of county incarceration. The downside of Kankakee is its utter lack of anything productive to do. Assuredly, Mr. Avant will have time for classes and programming later, and hopefully he will have the opportunity to take advantage of those kind of programs.

6

of punishment, deterrence and rehabilitation, as contemplated by §3553(a).  As such, a slightly lesser amount of incarceration may be appropriate for this reason.

   2.   **Heart condition**

As outlined in the PSR at page 25, Mr. Avant has some serious health issues.  He had a heart attack in 1995, and a second heart attack in 2006.  At the time of his first heart attack, he was approximately 22 years old. In 2006 he had an angioplasty, a procedure to unblock coronary arteries.  He is presently being treated with medications to address high blood pressure and high cholesterol.

While it is possible that Mr. Avant will live another 60 years, it is also possible that he will not live out a 10 year sentence.  A layperson's observation would be that multiple heart attacks before age 34 are a sign that a person is particularly predisposed to heart attacks.[4]  As a person with a significant heart condition, Mr. Avant is forced to confront the specter of his own mortality at a much earlier age than most other people.  Although we all should live each day as though it is our last, Mr. Avant faces a much higher likelihood of that being true than most other 35 year olds.

As a factor affecting sentencing, Mr. Avant's health mitigates towards a shorter sentence.  A ten year sentence is a larger proportion of the life of a person who has a lesser hope of living 70 years than it does someone with a family history of nongenarians.

---

[4]This is not an expert opinion, but common experience suggests that after one's mid-40's, heart attacks can be earned through a combination of stress, bad diet, and lack of exercise.  To have heart attacks in one's 20's and 30's, genetics must play an overwhelming role.

As such, ten years may constitute greater punishment for Mr. Avant that it would for another person. (It may constitute a life sentence.) Similarly, should Mr. Avant suffer another heart attack, it becomes less likely that he would be able to work in the high-stress field of competitive drug dealing. His heart condition is another reason to believe that Mr. Avant will not pose any threat to society if released in 2017. These health considerations suggest that a slightly lower sentence would still be sufficient in Mr. Avant's case.

> **3. The facts and circumstances of Mr. Avant and his situation strongly suggest that he is well on his way to rehabilitating himself, and a sentence in excess of ten years simply is not necessary for that process.**

By far, the strongest argument for a lower sentence comes from Mr. Avant's letter to the Court, and from the letters from his family. In a phrase, Mr. Avant seems to "get it." There are significant indications that he understands the wrongfulness of his conduct, and the overwhelming need for him not to go back to a criminal lifestyle. This is also backed up by his actions in voluntarily turning himself in, even though he knew at the time that he was facing a minimum of 10 years custody. His willingness to take that plunge is a concrete indication that it will not take a sentence in excess of 10 years for him to be appropriately deterred and rehabilitated. Where the sentencing court has reason to believe that a longer sentence is not necessary, §3553 dictates that the court should impose a shorter sentence. The signs of Mr. Avant's gentle nature and burgeoning rehabilitation suggest that a ten year sentence would be sufficient in this case.

A similar message can be derived from looking at Mr. Avant's record and his conduct with the gun in this case. It is readily conceded that Mr. Avant's record is not good, and the possession of guns by felons is bad. However, that record is already taken into account by Mr. Avant's criminal history category. Moreover, his gentle nature is slightly inconsistent with the fact that he is being given 60 months consecutive for the §924(c) in this case. An argument could be constructed that the Mr. Avant's conduct is slightly out of the heartland of §924(c) defendants, in that all of the evidence suggests that Mr. Avant was simply using the gun as a commodity to trade, and not with any specific offensive or even defensive plan in mind.

Mr. Avant recognizes that a §924(c) sentence is mandatory, and cannot be altered by §3553(a) considerations. However, Mr. Avant would simply ask the Court to take these factors into its global consideration of what sentence is sufficient, but not greater than necessary to serve the statutory goals.

### III. Conclusion

Mr. Avant concedes that a sentence within the guideline range would be sufficient. The question is whether a lesser sentence would also suffice. If so, then the higher sentence is not necessary.

In this case, for all the reasons discussed, it is respectfully suggested that a sentence of somewhat less than 170 months, but not less than 120 months, would be adequate to satisfy the statutory purposes listed in 18 U.S.C. §3553(a)

>Respectfully submitted,
>FEDERAL DEFENDER PROGRAM
>Terence F. MacCarthy
>Executive Director
>
>
>By: s/Daniel J. Hesler
>     Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe Suite 2800
Chicago, IL 60603
(312) 621-8347

## CERTIFICATE OF SERVICE

     The undersigned, Daniel J. Hesler , an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

     DEFENDANT AVANT'S MID-HEARING SENTENCING MEMORANDUM

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on July 24 , 2008, to counsel/parties that are non-ECF filers:

                    By:    s/Daniel J. Hesler
                            DANIEL J. HESLER
                            FEDERAL DEFENDER PROGRAM
                            55 E. Monroe St., Suite 2800
                            Chicago, Illinois 60603
                            (312) 621-8347